IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| PATRICIA A. CAMPBELL, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| v. | ) CASE NO.: 2:05-cv-615-MEF |
| | ) |
| GANNETT CO., INC., d/b/a THE | )(WO-Not Recommended for Publication) |
| MONTGOMERY ADVERTISER, | ) |
| | ) |
| DEFENDANT. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Patricia Campbell ("Campbell") brings suit against her former employer, The Montgomery Advertiser[1] ("Defendant") for alleged discrimination on the basis of race and sex and for retaliation. Campbell's claims are brought pursuant to 42 U.S.C. § 2000e *et seq.* ("Title VII") and 42 U.S.C. § 1981. This cause is presently before the court on the Defendant's Motion for Summary Judgment (Doc. # 12).

## JURISDICTION AND VENUE

The court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights). The parties do not contest personal jurisdiction and venue, and the court finds adequate allegations in support of personal jurisdiction and venue.

---

[1] The Complaint names the Gannett Co. Inc., a corporation doing business as The Montgomery Advertiser, as the sole defendant to this action. The Advertiser Company, which does business as The Montgomery Advertiser, has defended this action, but contends that it has not been properly named in the Complaint.

## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to

interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255. After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

### FACTS

The court has carefully considered all deposition excerpts and documents submitted in support of and in opposition to the motion. The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following relevant facts:

Campbell is an African-American female. From July of 1988 to September 27, 2004, Defendant employed Campbell. When she was initially hired, Campbell worked as a transient sales representative. Her duties included taking incoming telephone calls from customers wishing to purchase advertising in Defendant's newspaper. After approximately one year, Defendant awarded Campbell a position as a Contract Sales Representative. As a Contract Sales Representative, Campbell was responsible for servicing and developing

classified advertising accounts and non-accounts. Specifically, she handled incoming advertisement orders, performed customer service, called customers for advertisement renewals, and sold advertising space for sale specials. Campbell had a group of assigned customers. For most of the rest of her time as Defendant's employee, Campbell was a Contract Sales Representative.[2]

Jennifer Jensen ("Jensen"), a Caucasian female, was the Classified Department's Inside Sales Supervisor and Campbell's immediate supervisor. Jensen reported to Kathryn Mount ("Mount"), a Caucasian female, the Classified Manager. Campbell worked with a number of other Contract Sales Representatives: Brenda Jackson, an African-American female; Cornelius Jones, an African-American male; Thomas Taylor, an African-American male; Margie Jean Robinson-Smith, an African-American female; Ed Smith, an African-American male; and Joe Howard, an African-American male.[3]

Throughout her employment with Defendant, Campbell complained about a variety of issues. On September 14, 2003, she made perhaps her most notable complaint when she delivered a thick packet of information to Advertising Director Ron Davidson and Human Resources Director Linda Browder. This packet included copies of several of her prior

---

[2] There was a period of time when Campbell was again working as a Transient Sales Representative, but during the period of time relevant to the claims in this case, Campbell was working as a Contract Sales Representative.

[3] Joe Howard worked with Campbell for a time, but it is undisputed that he left his position with Defendant prior to the date on which Campbell's employment was terminated.

written complaints such as a July 2000 complaint expressing Campbell's disagreement with how sales goals were derived, about the commission structure, about vacation time, about the filing of vacant positions and about the way that free ads were distributed. Another document in the packet was a June 2002 document in which Campbell expressed various complaints about vacation, holiday, and seniority issues and an April 2003 complaint about morale.[4]

Campbell believes this complaint in 2003 resulted in the termination of her employment in September of 2004. Defendant disputes this and contends that it terminated Campbell's employment in September of 2004 due to what they contend are her repeated violations of company policies, including company policies regarding billing.

Defendant's policies required that classified ads placed in its paper must run on both Sundays and Mondays and cannot run on Sundays alone. Because billing periods ended on Sundays, Defendant required their sales representatives to split the revenue from classified ads placed in both a Sunday and a Monday paper between billing periods. For example, if an ad placed to run on Sunday and Monday cost $500, the sales employee placing the ad would allocate $250 to the billing period which ended on Sunday and $250 to the next billing

---

[4] This was not Campbell's first complaint about morale. In January of 2002, Campbell sent a written memorandum to Mount in which Campbell complained about morale and accused Mount of being the "largest part of that discontent." Campbell further stated to Mount that Mount was not "greatly liked nor respected" and criticized Mount for taking her job "too seriously." She accused Mount of being "in the clouds" and told to "take a good long look at things and try some different approaches lest we all become consumed by the prevailing gloom and bitterness that colors our every day."

period which began on Monday. This process is referred to in the factual record as splitting ads across billing periods, but it perhaps more accurately should have been described as splitting ad revenue across billing periods.

On November 5, 2003, Jensen had individual discussions with Campbell and with all other Contract Sales Representatives in which she explained that splitting ads across billing periods was not an option and that further failures in that area would result in disciplinary action. On November 11, 2003, Jensen documented these conversations with email messages to each employee summarizing the individual discussions she had with each of them. On that same date, Campbell sent Jensen a response seeking confirmation that everyone was getting this same email message and that the message was going in everyone's file.

In January of 2004, Campbell failed to split thirteen crossover ads. This meant that nearly 12% of her total ads taken were improperly billed. None of her co-workers had more than three improperly billed ads (for that employee the rate of improper billing was a mere 1.91%). Defendant gave Campbell a verbal warning. In February of 2004, Campbell had nine crossover ads improperly billed -- 10.98% of her total ads taken. During this same period, none of her co-workers had more than three improperly billed ads (for that employee the percentage of improperly billed ads was only 1.58%). On March 2, 2004, Defendant issued Campbell a written warning regarding problems with failing to split ads that cross billing periods. At this same time two other employees with highest volume of improperly allocated cross over ads also were issued warnings. In March of 2004, Campbell had only

one improperly billed crossover ad. She did not receive any verbal or written warning. During this same period, a co-worker with six crossover ads (3.39% if the total ads that employee took) received a verbal warning. In April of 2004, Campbell had three crossover ads, but was not counseled. In May of 2004, Campbell had five crossover ads (3.45% of her total ads taken). Defendant gave her a "final written warning" which she received on June 4, 2004. Two of her co-workers who had problems with crossover ads, albeit at a lower percentage than Campbell, also received warnings. During the month of June of 2004, Campbell had only one crossover ad and did not receive any form of counseling for it.

By July of 2004, Campbell had a total of thirty-two ads that she had failed to split for the year and she had repeatedly been cautioned that failure to split such ads was improper. On July 13, 2004, Campbell received her annual performance appraisal. Not surprisingly it noted that Campbell had repeated violated the cross-billing policy. For the same period, her co-workers had failed to spilt twenty, eleven, nine, eight, and eight times respectively. It is undisputed that during this period all employees with high percentages of violating this policy received warnings - either written or verbal. There is no evidence that Campbell alone was being disciplined on this issue. Moreover, there is not evidence that only females were disciplined. Objectively speaking, Campbell's rate of improperly billing crossover ads was much higher than her co-workers. For this reason, Defendant elected to put Campbell on a performance improvement plan in July 26, 2004. The performance improvement plan clearly stated that Campbell was not to have more than two ads that cross the billing period in the

7

next sixty days. Nevertheless, in August of 2004, Campbell had five crossover ads improperly billed. Defendant terminated Campbell's employment on September 27, 2004. Defendant told Campbell that her employment was being terminated because of her repeated violations of policies and procedures regarding the allocation of revenue from crossover ads. It is undisputed that no one ever told Campbell that there was any other reason for the termination of her employment.

Believing that the termination of her employment was improperly motivated, Campbell filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 14, 2004. In this Charge of Discrimination, Campbell alleged that she had been subjected to discrimination on the basis of her race and sex and to retaliation for having opposed unlawful practices. On March 31, 2005, the EEOC made a no cause finding and issued Campbell a notice of her right to sue. Campbell filed this lawsuit on June 29, 2005.

## DISCUSSION

**A. Race**

In her Complaint, Campbell alleges that Defendant discriminated against her on the basis of her race. She brings this claim pursuant to Title VII (Count One) and 42 U.S.C. § 1981 (Count Four). Defendant moved for summary judgment on these claims. In her submissions in opposition to Defendant's Motion for Summary Judgment, Campbell's counsel concedes that "the evidence supporting her claim of race discrimination under Title

VII and Section 1981, *as developed through discovery,* is not compelling" and indicated that Campbell does not argue for the continuation of these claims in this matter. In light of this concession and upon independent review of the record before this court which is devoid of evidence of disparate treatment on the basis of race, the court finds that the Motion for Summary Judgment is due to be GRANTED to the extent that it seeks judgment in Defendant's favor on the claims of race discrimination contained in the Complaint (Counts One and Four).

**B. Sex**

In her Complaint, Campbell alleges that Defendant discriminated against her on the basis of her sex; she brings this claim pursuant to Title VII (Count Two). Title VII prohibits employers from discriminating against employees with respect to decisions relating to the termination of their employment. *See* 42 U.S.C. § 2000e-2(a)(1). "A Title VII disparate treatment plaintiff must prove that the defendant acted with discriminatory purpose." *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1184 (11th Cir. 1984). A plaintiff may attempt to do so by offering either statistical, direct, or circumstantial evidence. In this case, Campbell argues that she has established a prima facie case of discriminatory termination by circumstantial evidence.

In evaluating disparate treatment claims supported by circumstantial evidence, courts within this Circuit and elsewhere rely on the framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) and *Texas Dep't*

9

*of Community Affairs v. Burdine,* 450 U.S. 248 (1981). *See, e.g., Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1087 (11th Cir. 2004).

> Under this framework, the plaintiff first has the burden of establishing a prima facie case of discrimination, which creates a rebuttable presumption that the employer acted illegally. A plaintiff establishes a prima facie case of disparate treatment by showing that she was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class. The methods of presenting a prima facie case are not fixed; they are flexible and depend to a large degree upon the employment situation.

*Id.* (internal citations omitted). Once a plaintiff establishes a prima facie case, the employer must articulate a legitimate, non-discriminatory reason for its actions. *Id.* The employer has a burden of production, not a burden of persuasion, and it need not persuade the court that it was actually motivated by the proffered reasons. *Id.*

If an employer satisfies its burden by articulating a non-discriminatory reason, it rebuts the presumption of discrimination created by the prima facie case. *Id.* The burden of production then shifts to the plaintiff to offer evidence that the alleged reason of the employer is a pretext for illegal discrimination. *Id.* The plaintiff may satisfy this burden of showing pretext by persuading the court either directly that a discriminatory reason more than likely motivated the employer or indirectly that the proffered reason for the employment decision is not worthy of belief. *See, e.g., Burdine,* 450 U.S. at 256. The plaintiff may accomplish this in a number of ways. Recognized ways of establishing pretext in cases involving the termination of an employee for alleged violation of a work rule include a

showing by the plaintiff either that she did not violate the work rule or that, if she did, other employees not within the protected class who engaged in similar acts were not similarly treated. *See, e.g., Anderson v. Savage Labs., Inc.,* 675 F.2d 1221, 1224 (11th Cir. 1982).

In this case, Campbell claims that the termination of her employment was discriminatory.

> A plaintiff's prima facie case for a discharge-discrimination claim must show the following elements: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the position at issue; (3) the plaintiff was discharged despite his qualification; and (4) the plaintiff was subject to differential treatment, that is, he was either (a) replaced by someone who was not a member of the plaintiff's protected class or (b) a similarly situated employee who was not a member of the protected class engaged in nearly identical conduct and was not discharged.

*Keel v. U.S. Dep't of Air Force*, 256 F. Supp. 2d 1269, 1285 (M.D. Ala. 2003), *aff'd without opinion*, 99 Fed. Appx. 880 (11th Cir. Mar 02, 2004); *Davis v. Qualico Miscellaneous Inc.,* 161 F. Supp. 2d 1314, 1319 (M.D. Ala. 2001). *Accord, Williams v. Motorola,* 303 F.3d 1284, 1293 (11th Cir. 2002). It is not disputed that as a female Campbell is a member of a protected class, nor is it disputed that the termination of her employment constitutes an adverse employment action. The parties disagree as to whether Campbell was qualified for the position she held. For purposes of this motion, the court is satisfied that the evidence, when viewed in the light most favorable to Campbell, establishes that she was minimally qualified for the job. Thus, the true element of the *prima facie* case at issue in this action is whether Campbell was subjected to differential treatment.

11

In support of her contention that she was subjected to differential treatment, Campbell points to male employees who she contends were similarly situated to her and who engaged in nearly identical conduct[5] and were not discharged. In evaluating this claim, the court must be mindful of the binding precedent from the Eleventh Circuit Court of Appeals which requires Campbell to be similarly situated in all relevant respects to those comparators she identifies. *See, e.g., Morris v. Emory Clinic, Inc.*, 402 F.3d 1076, 1082 (11th Cir. 2005) (doctor discharged from clinic due to patient complaints about his conduct who couldn't show that he was replaced by someone outside his protected class and who couldn't show that a comparable person outside the his protected class received "nearly identical" complaints, but was not fired failed to establish a prima facie case); *Silvera v. Orange County Sch. Bd.,* 244 F.3d 1253, 1259 (11th Cir. 2001) (reversing judgment in favor of plaintiff because employer entitled to judgment as a matter of law where plaintiff's comparator engaged in fewer instances of misconduct than plaintiff); *Maniccia v. Brown,* 171 F.3d 1364, 1368-69 (11th Cir. 1999) (affirming summary judgment in employer's favor where alleged

---

[5] In addition to comparator evidence relating to work rule violations, Campbell attempts to also rely on evidence relating to awards for Salesperson of the Month and Salesperson of the Year in 2003. According to Campbell these awards were given to male employees when they should have been given to her. Campbell cannot bring claims relating to these awards in this lawsuit because she did not timely file a Charge of Discrimination with the Equal Employment Opportunity Commission relating to these awards. To the extent that she offers the evidence as some sort of additional circumstantial evidence of sexist motive, the court finds that they are of little utility as they relate to compensation and performance awards rather than discipline which is the employment action at issue in this suit.

misconduct of comparators was not sufficiently similar to support disparate treatment claim); *Holifield v. Reno,* 115 F.3d 1555, 1563 (11th Cir. 1997) (affirming summary judgment where plaintiff failed to produce sufficient evidence that non-minority employees with which he compares his treatment were similarly situated in all aspects, or that their conduct was of comparable seriousness to the conduct for which he was discharged); *Jones v. Gerwens,* 874 F.2d 1534, 1540-42 (11th Cir. 1989); *Nix,* 738 F.2d at 1185-87 (African-American plaintiff who was replaced by another African-American after termination for violation of work rule failed to make out a prima facie case of race discrimination because he did not meet his burden of showing that a white employee in similar circumstances was retained while he was fired). In evaluating the similarity of the comparators identified by a plaintiff, the most important variables in a discriminatory discipline case are the nature of the offenses committed and the nature of the punishments imposed. *See, Jones v. Gerwens,* 874 F.2d at 1539. Both the "quantity and the quality of the comparator's misconduct must be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples and oranges." *Maniccia,* 171 F.3d at 1368. In making this analysis a court must keep in mind that "Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules[.]" *Id.* at 1369. Moreover, the actions of the employer toward the proffered comparators are only relevant if the decisionmaker knew of the rule violations by the comparators and took no action against them. *Jones v. Gerwens,* 874 F.2d at 1542.

With these principles in mind, the court will examine Campbell's contention that her employment was terminated for the violation of company policy and male employees who violated the same company policy were retained. Campbell correctly notes that like her, some of her male counterparts, namely Howard, Taylor and Jones, violated Defendant's policy regarding the proper billing of crossover ads. However, the court cannot say that the quantity of the misconduct was sufficiently similar to Campbell's to establish a *prima facie* case of disparate treatment on the basis of sex. The chart below summarizes the number of crossover ads each had during the first eight billing periods in 2004:

|  | Campbell | Howard | Taylor | Jones |
|---|---|---|---|---|
| Period 1 | 13 | 3 | 0 | 1 |
| Period 2 | 9 | 2 | 1 | 3 |
| Period 3 | 1 | 1 | 1 | 2 |
| Period 4 | 3 | 0 | 0 | 1 |
| Period 5 | 5 | 0 | 2 | 2 |
| Period 6 | 1 | 2 | 4 | 0 |
| Period 7 | 2 | 1 | 1 | 1 |
| Period 8 | 5 | 1 | 0 | 5 |
| Total for 1-8 | 39 | 10 | 9 | 15 |

Clearly, Campbell had far more instances of violating policy than Howard, Taylor, and Jones. Indeed, she had more violations than Howard, Taylor, and Jones combined. Moreover, it is undisputed that during this period, while Defendant did not terminate the employment of Howard, Taylor or Jones, it did subject each of them to either verbal or written disciplinary

14

action for their violations of this policy. Consistent with the previously cited binding precedent from the Eleventh Circuit Court of Appeals, this court finds that Campbell has failed to establish a prima facie case by pointing to a similarly situated employee who was not a member of the protected class engaged in nearly identical conduct and was not discharged. Thus, the court finds that the undisputed evidence, when viewed in the light most favorable to Campbell fails to establish a *prima facie* case of sex discrimination. For this reason, Defendant's motion for summary judgment on Count Two is due to be GRANTED.[6]

**C. Retaliation**

In her Complaint, Campbell alleges that Defendant retaliated against her for opposing unlawful employment practices and raising concerns about race-based discrimination. She brings this claim pursuant to Title VII (Count Three) and 42 U.S.C. § 1981 (Count Five).

> To establish a prima facie case of retaliation, [an employee] must show: (1) she engaged in protected activity; (2) her employer was aware of that activity; (3) she suffered adverse employment action; and (4) there was a causal link between her protected activity and the adverse employment action.

*Maniccia v. Brown,* 171 F.3d 1364, 1369 (11th Cir. 1999) (*citing Little v. United Tech.,* 103 F.3d 956, 959 (11th Cir. 1997)).

---

[6] In the alternative, the court finds that Defendant is entitled to summary judgment on Campbell's sex discrimination claims because the court is satisfied that Campbell has not shown that the legitimate, non-discriminatory reason Defendant has proffered for the termination of Campbell's employment was a pretext for intentional discrimination. For this additional reason, the motion for summary judgment as to Count Two is due to be GRANTED.

Defendant contends that Campbell has not established the fourth element of the *prima facie* case – the causal link between the protected activity and the adverse employment action. Thus, this court need not address whether Campbell's complaints to her employer constitute protected activity; whether her employer knew of her protected activity; or whether she suffered an adverse employment action. Instead the court will focus its inquiry on the causal link element.

"The causal link element is construed broadly so that 'a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.'" *Pennington v. City of Huntsville*, 261 F.3d 1262 (11th Cir. 2001) (citations omitted). One common method of establishing the causal link element with circumstantial evidence is close temporal proximity *between the adverse employment action and the protected activity.*[7] However, where there is significant delay between the protected conduct

---

[7] Of course in this case, Campbell does not exactly argue that temporal proximity between her protected conduct and the termination of her employment constitutes sufficient circumstantial evidence that some causal relationship exists between the protected activity and the termination of her employment. Instead, Campbell argues that Defendant has an established pattern of taking action against her after she makes a complaint and that this pattern is sufficient evidence of that her termination and her September 2003 complaint are not wholly unrelated. In making this argument, Campbell also attempts to show that the progression of disciplinary actions against her which preceded the actual termination of her employment are sufficient evidence to satisfy her evidentiary burden. Campbell cites no cases in which a court found a plaintiff's burden of establishing the causal link element of the *prima facie* case was satisfied based on the temporal link between protected acts by a plaintiff and allegedly retaliatory actions other than the actual adverse employment action at issue in the suit. In fact, the cases on which Campbell relies involve close temporal proximity between a plaintiff's protected conduct and the adverse employment action at issue in the suit.

and the allegedly retaliatory acts, the timing of the events does not constitute circumstantial evidence of causation. *See, e.g., Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273-74 (2001) (citing with approval several court of appeals decisions for the proposition that a three to four month gap is insufficient to establish the causal relation prong in a retaliation case); *Wascura v. City of South Miami,* 257 F.3d 1238, 1244-45 (11th Cir. 2001) (While a close temporal proximity between two events may support a finding of a causal connection between those two events, the three and one-half month period between plaintiff's protected conduct and the adverse employment action challenged does not, standing alone, establish a causal connection); *Keel v. United States Dep't of Air Force,* 256 F. Supp. 2d 1269, 1291 (M.D. Ala. 2003) (more than seven month gap between protected conduct and allegedly retaliatory conduct was insufficient as a matter of law to establish the causation element of the *prima facie* case of retaliation); *Gaddis v. Russell Corp.,* 242 F. Supp. 2d 1123, 1146-47 (M.D. Ala.)*, aff'd without opinion,* 88 Fed. App. 385 (11th Cir. 2003) (granting employer summary judgment on three of plaintiff's retaliation claims because plaintiff was unable to establish the requisite causal connection between her protected conduct and her adverse employment actions where lapses of time six months or longer existed between the protected conduct and the adverse employment actions).

Here more than a year elapsed between the protected conduct Campbell identifies, namely her September 2003 complaints, and the termination of her employment in late September of 2004. On such facts the court is not persuaded that Campbell has established

17

a *prima facie* case of retaliation. Given that Plaintiff has failed to present evidence in support of this element of her case on which she bears the ultimate burden of proof, summary judgment is due to be GRANTED in favor of Defendant on Campbell's retaliation claims (Counts Three and Five).

Even assuming *arguendo* that Campbell had established a *prima facie* case of retaliation, the court finds that Defendant is still entitled to summary judgment on the retaliation claims because Campbell has not established that Defendant's reasons for her termination are pretextual. If a plaintiff establishes a prima facie case of retaliation, the burden then shifts to the employer to rebut the presumption by articulating legitimate, non-retaliatory reasons for its employment action. *Holifield*, 115 F.3d at 1564. "This intermediate burden is 'exceedingly light.'" *Id*. (citing *Turnes v. AmSouth Bank, N.A.,* 36 F.3d 1057, 1061 (11th Cir. 1994)). The employer has the burden of production, not of persuasion, and thus does not have to persuade a court that it was actually motivated by the reason advanced. *See McDonnell Douglas*, 411 U.S. at 802; *Burdine*, 450 U.S. at 253-255.

Once the employer satisfies this burden of production, "the presumption of discrimination [or retaliation] is eliminated and 'the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (citations omitted). The establishment

of a prima facie case does not in itself entitle a plaintiff to survive a motion for summary judgment. *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987); *Pace v. S. Ry. Sys.*, 701 F.3d 1383, 1389 (11th Cir. 1983). After an employer proffers non-discriminatory or non-retaliatory reasons for its actions, "[i]n order to avoid summary judgment, a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that each of the employer's proffered . . . reasons is pretextual." *Chapman*, 229 F.3d at 1037.

Campbell engaged in the conduct in violation of company policy for which Defendant terminated her employment. It is undisputed that she repeated failed to properly split revenue from ads across billing periods. It is undisputed that she was repeatedly warned to curtail this conduct. It is also undisputed that her problem on this point was far worse than any other salesperson in Defendant's employ. If Defendant made a business decision to enforce its policy, it is not for this court to question the wisdom of that decision because Campbell was a long-term employee with a track record of meeting or exceeding sales goals. The record before this court, viewed in the light most favorable to Campbell, is not sufficient to permit a reasonable factfinder to conclude that Defendant's proffered reasons for the termination of Campbell's employment are pretextual. For this additional reason, Defendant is entitled to summary judgment on Campbell's retaliation claims.

## CONCLUSION

For the reasons stated above, it is hereby ORDERED that the Defendant's Motion for Summary Judgment (Doc. # 12) is GRANTED.

The Clerk of the Court is hereby DIRECTED to remove the above-styled case from the August 21, 2006 trial docket.

A separate final judgment will be entered in accordance with this Memorandum Opinion and Order.

DONE this 19th day of July, 2006.

                                           /s/ Mark E. Fuller
                                   CHIEF UNITED STATES DISTRICT JUDGE